GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Fl.
New York, New York 10004
(646) 964-9640
Jason L. Solotaroff
Amy E. Robinson
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

STELLA PAK, M.D.,

                  Plaintiff,             Dkt. No. **1:23-cv-378 (DNH/DJS)**

         -against-                   **COMPLAINT**

ALBANY MED HEALTH SYSTEM,        **JURY TRIAL DEMANDED**

                  Defendant.

-----------------------------------------------------------------X

       Plaintiff Stella Pak, M.D., by her attorneys Giskan Solotaroff & Anderson LLP, for her

complaint against Defendant Albany Med Health System, alleges as follows:

### NATURE OF THE ACTION

       1.     This is an action for disability discrimination and hostile work environment in

violation of Section 504 of the Rehabilitation Act, 29 U.S.C.S. § 794, and the New York State

Human Rights Law ("NYSHRL"), Executive Law § 292.

       2.     Plaintiff Stella Pak, M.D., was a resident in the Neurology Medical Residency

Program at Defendant Albany Med Health System ("Albany Med").

       3.     Dr. Pak has Autism Spectrum Disorder ("ASD"), a disability under the

Rehabilitation Act and the NYSHRL.  After Dr. Pak disclosed her disability to the neurology

residency program, she was faced with hostility and unfair treatment at the hands of the

Neurology Program Directors, Dr. Colum Amory and Dr. Kimberly Robeson.  Albany Med created a hostile work environment for Dr. Pak, failed to accommodate her disability and ultimately terminated her from the residency program because of her disability.

4.      As a result of Albany Med's discriminatory treatment of Dr. Pak, she has incurred substantial economic damages as well as severe emotional distress damages.

## THE PARTIES

5.      Plaintiff Stella Pak is domiciled in Albany, New York.

6.      Defendant Albany Med Health System ("Albany Med") is a not-for profit-corporation organized under the laws of New York.  Albany Med is a recipient of federal financial assistance, which includes, but is not limited to, Medicare/Medicaid reimbursement.  Albany Med is headquartered in Albany, New York.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims made pursuant to the Rehabilitation Act pursuant to 28 U.S.C. §1331.

8.      This Court has jurisdiction over the claims made pursuant to the NYSHRL pursuant to 28 U.S.C. §1367.

9.      Venue is properly before this Court pursuant to 28 U.S.C. § 1391(b) as Defendant is located in this District.

10.      This Court has personal jurisdiction over Albany Med because it is established under the laws of New York State and operates its business in New York State.

## THE FACTS

### A.  Dr. Pak's Background and Disability

11.      Dr. Pak received a Bachelor of Science degree from Austin Peay State University in Clarksville, Tennessee, in 2013.  In college, Dr. Pak received multiple awards for leadership, community service, mentoring, and kindness, and was the founding president of the Women's Leadership Organization.  Dr. Pak graduated from University of Toledo College of Medicine in Toledo, Ohio, in 2017, where she received the Presidential Scholarship, a merit-based, full-ride award that is given to the top two students in each graduating class.

12.      When Dr. Pak was approximately three years old, she was first diagnosed with autism spectrum disorder ("ASD").  During college and medical school, Dr. Pak received accommodations for her autism.

13.      Dr. Pak's autism manifests itself in several ways.  First, Dr. Pak has a tendency to be overly inclusive in her communications, and sometimes provides excessive details.  Second, Dr. Pak is very literal in her interpretation of language.  It can be challenging for Dr. Pak to pick up on sarcasm, innuendo, or subtleties; she benefits from direct communication.  Finally, when faced with a surprise or sudden new information, Dr. Pak has difficulty displaying the appropriate emotion in the moment.  She requires time to process the information and to react accordingly.

14.      Although Dr. Pak's disability makes certain interpersonal communications difficult for her, it does not have a negative bearing on Dr. Pak's cognitive abilities or on her clinical competencies in caring for patients.

15.     Dr. Pak entered the four-year Neurology Residency Program at Albany Med in September 2021.  Because Dr. Pak had prior post-graduate medical training, she entered the Albany Med Neurology Residency Program in the second year of the program ("PGY2").

16.     At the time Dr. Pak began the Neurology Residency Program, the Program Director was Dr. Colum Amory.  In July 2022, Dr. Amory was replaced by Dr. Kimberly Robeson as Program Director.  During the first half of 2022, Dr. Amory and Dr. Robeson shared responsibilities as co-Program Directors while Dr. Robeson transitioned into the role.

17.     Despite the many challenges and discriminatory actions Dr. Pak faced as a Neurology Resident at Albany Med, which are detailed below, she excelled in many areas. Indeed, Dr. Pak's evaluations at Albany Med were large positive.  One attending physician who supervised Dr. Pak noted that she "was very kind to patients, spoke clearly, and was able to address more (not all) of the concerns that I told her to focus on."  Another attending physician wrote that Dr. Pak "continues to advocate for patients and understands the need for other non neurologic referrals."

18.     Dr. Pak also has strong research skills.  She was one of only two residents who presented projects to Albany Med's annual research conference in 2022 and was the only resident at Albany Med who presented research both inside and outside the hospital for the academic year 2021-2022.  In 2022, Dr. Pak published two articles and seven new abstracts.

19.     Dr. Pak was also able to obtain a donation of an expensive piece of equipment to the hospital to test ultra-low-frequency sound waves on coma patients.  However, following Dr. Pak's unlawful termination, the company rescinded the donation.

**B. Dr. Pak is Unfairly Placed on Remediation and, Despite Hurdles, Improves**

20.     Almost immediately after Dr. Pak joined the Residency Program in September 2021, some of the other residents began to antagonize her, spread baseless rumors about her, and bully her. From what Dr. Pak heard, these rumors had nothing to do with her clinical skills, which are strong, and were based on Dr. Pak's interpersonal communication style, which is a manifestation of her autism. For example, on one occasion, Dr. Pak was overly literal in her interpretation of one of the Chief Residents' instructions, which led to a misunderstanding that resulted in criticism.

21.     Despite Dr. Pak's clinical competence, Albany Med unfairly, and without any prior verbal or written warning, placed her on a remediation plan in January 2022. Albany Med's stated reason for the remediation was to address some of Dr. Pak's interpersonal and communication skills, including so-called "social training." In other words, Albany Med imposed discipline on Dr. Pak for her interpersonal style, which is *a symptom of her disability*. There were no serious concerns about Dr. Pak's clinical skills expressed at this time.

22.     Dr. Amory, the Program Director, was explicit in conveying his bias against doctors with autism: he expressed concern about Dr. Pak's ability to function as a physician, given her diagnosis. Dr. Amory instructed that the remediation plan include an independent psychiatric evaluation. The ordering of such an evaluation made no sense; Dr. Pak was already voluntarily seeing a psychiatrist and a therapist, and there were no doubts about Dr. Pak's competency to perform her duties at work. If Albany Med's was truly invested in helping Dr. Pak improve her communication skills, then it should have provided appropriate opportunities and resources for her to work on such skills.

23.     Despite Dr. Pak's objections to the remediation plan, she complied.  Dr. Amory chose the Committee for Physician Health ("CPH") to manage the evaluation.  In February and March 2022, Dr. Pak met with Dr. Abigail J. Herron, the psychiatrist selected by CPH to perform the evaluation.  Dr. Herron found Dr. Pak competent to perform the essential functions of her job but – to no one's surprise – noted that she has communication and social issues, which required additional training and psychiatric appointments.

24.     Crucially, Dr. Herron noted that, according to Dr. Amory, "there have been no complaints from patients, and there were no direct concerns raised about the quality of care [Dr. Pak] has provided."  Dr. Herron was told as well that in March 2022 that "there had been an improvement and Dr. Pak had received positive feedback from an attending."

25.     As part of the remediation plan and pursuant to the recommendation of Dr. Herron, Dr. Pak attempted to attend weekly appointments with a psychiatrist and a clinical psychologist.  However, the Neurology Department program leadership, along with Dr. Pak's fellow residents in the Neurology Department, many of whom were already antagonistic to her, did nothing to help facilitate Dr. Pak's attendance at her mandated psychiatric appointments.

26.     Indeed, the Chief Residents told Dr. Pak she could not leave the hospital to attend her therapy appointments privately, so for several weeks Dr. Pak was forced to conduct the appointments by phone at the nurses' station of the hospital.  Neither Dr. Pak nor her therapist were comfortable with this due to the lack of privacy at the nurses' station, which resulted in Dr. Pak missing several appointments. Accordingly, Albany Med failed to provide an accommodation for Dr. Pak that its own evaluator had mandated as part of remediation.

27.     In March and April 2022, Dr. Herron and Dr. Amory advised Dr. Pak to divulge her autism diagnosis to some of her coworkers to gain their support.  This strategy backfired

6

badly: After Dr. Pak disclosed her diagnosis, certain residents began to claim that they did not

trust Dr. Pak; one resident told her that "autism is only for little children" and that "people grow

out of it"; and Dr. Robeson, who at that time was gradually assuming Dr. Amory's

responsibilities as Program Director, suggested that Dr. Pak find another specialty.

       28.     Despite these challenges, throughout the spring of 2022, there were no patient

care concerns.  And although Dr. Amory and Dr. Robeson did not meet with Dr. Pak on a regular

basis to discuss her progress toward meeting the goals of remediation, demonstrating their lack

of investment in her improvement, Dr. Pak sought out the Program Directors in March and April

of 2022 to inquire about her progress.  In March 2022, Dr. Amory noted that Dr. Pak's clinical

performance and interpersonal skills were improving.  In early April 2022, Dr. Robeson, who

had been transitioning into the role of Program Director, informed Dr. Pak that there had been no

complaints about Dr. Pak, leading Dr. Pak to conclude that she was passing remediation.

**C. Albany Med Fires Dr. Pak Based on her Disability, then Publicly Humiliates her**

       29.     In mid-April, Dr. Pak's work situation took a turn for the worse.  On April 14,

2022, Dr. Pak asked one of the chief residents, Dr. Amit Shetty, to cover for her for 30 minutes

so she could attend an appointment with her psychiatrist.  Dr. Shetty became angry and told Dr.

Pak that covering for her was ruining his educational experience.  Dr. Shetty told Dr. Pak he

would be bringing up the issue with program leadership because it was not fair that Dr. Pak was

requesting coverage.

       30.     Dr. Shetty also asked Dr. Pak numerous personal questions relating to her

psychiatric care, including how often she sees her provider, what she is being treated for, the

name of the provider, the duration of each appointment, and how long it takes for her to go to the

office.  When Dr. Pak expressed her discomfort with disclosing private medical information, Dr.

Shetty said the residents, including himself, need to know because it is affecting the wellbeing and educational experience of others in the program.

31.     In response to this incident, on April 18, 2022, Dr. Pak called Dr. Amory to discuss an explicit accommodation that would enable her to attend her weekly medical appointments with her psychiatrist and clinical psychologist.  Dr. Amory did not assist Dr. Pak in finding coverage during her medical appointments, he did not instruct her fellow residents to accommodate her by providing coverage whenever possible, and he did not instruct residents to stop asking her questions about her private medical information.  Instead, Dr. Amory merely suggested that Dr. Pak send an email to her colleagues referencing her autism diagnosis and requesting their support.

32.     Following his advice, Dr. Pak disclosed additional information regarding her diagnosis to her colleagues and explained why it was important for her to attend weekly medical appointments.

33.     On April 23, 2022, Dr. Pak was exposed to a patient who was symptomatic with norovirus, a highly contagious intestinal virus that causes vomiting, diarrhea, and fever.

34.     Two days later, on April 25, 2023, while working a shift at the hospital Dr. Pak developed a fever of 103 degrees and experienced other severe symptoms of norovirus.  Dr. Pak called the chief resident in charge of scheduling, who instructed her to go home and who sent in a back-up resident to cover for Dr. Pak.

35.     As Dr. Pak was leaving the hospital, she saw Dr. Shetty, who was working on a computer.  Dr. Shetty scolded Dr. Pak for leaving the hospital, accusing her of stranding her team and only looking out for herself.  Dr. Shetty warned Dr. Pak that she would face a "major consequence" for her behavior and threatened that she would have a difficult time finding a

position at another residency program.  Dr. Shetty added that the residents were already
accommodating her and asked, facetiously, "how much more help do you need from us?"  When
Dr. Pak explained that she was sick and that remaining at the hospital would only endanger the
health of patients and staff, Dr. Shetty ignored her.  As Dr. Pak was leaving, Dr. Shetty told her
he was going to report her to program leadership.

36.    Dr. Shetty apparently followed through with his threat because the following day,
April 26, 2022, Dr. Pak was told not return to work, but to attend a meeting with Dr. Amory and
Dr. Robeson on April 28, 2022.

37.    On April 27, 2022, Dr. Robeson sent an email to the Neurology residents
regarding the resident room.  The email stated that certain items had been going missing from the
resident room stated that, if the problem persists, security cameras may be installed.

38.    The following day, April 28, 2022, Dr. Pak met with Dr. Amory and Dr. Robeson
as scheduled.  Dr. Amory and Dr. Robeson told Dr. Pak that she was being terminated from the
Neurology Residency Program because she had not been complying with the social training
aspect of her remediation plan.

39.    Additionally, Dr. Amory and Dr. Robeson aggressively questioned Dr. Pak about
the items that were missing from the Residents' workroom, including a cell phone charger and a
small reflex hammer, as well as vandalism on some of the artwork exhibited on the wall of the
Residents' workroom.  Dr. Amory and Dr. Robeson strongly implied that Dr. Pak had committed
these infractions.  Such implications were and are completely baseless; there was no evidence
suggesting that Dr. Pak had stolen or damaged anything.  Dr. Pak denied all allegations of
wrongdoing.

40.     Dr. Amory, supported by Dr. Robeson, stated that several of the neurology residents suspected Dr. Pak and that "what matters is that some people here think that you did it."  Dr. Amory further stated that the accusations were a symptom of the mistrust that Dr. Pak had cultivated in her fellow residents.

41.     Dr. Pak became extremely upset upon hearing this, began to cry, and expressed that she did not feel much hope in her career as a doctor.

42.     In response, Dr. Amory ordered that Dr. Pak must be taken to the Emergency Department ("ED").  When Dr. Pak clarified she had no intention to harm herself or others, Dr. Amory threatened to call security and asked Dr. Pak if she wanted to make a scene.  Dr. Pak begged Dr. Amory to allow her to go to a hospital other than Albany Med, as she did not want the attending physicians, residents, and nurses – her teachers, fellow students, and colleagues – to see her being taken to the ED.  Dr. Amory refused.  Dr. Amory and Dr. Robeson then forced Dr. Pak to sit in a wheelchair and took her to the ED against her wishes.

43.     At the ED, the attending physician said he had no ground to hold Dr. Pak against her will, as she is a competent adult with no indication of suicidal or self-injurious ideation.

44.     This event, which is another example of the abusive and hostile work environment that Dr. Pak was subjected to on account of her disability, deeply traumatized Dr. Pak on many levels.

45.     After Dr. Pak was involuntarily brought to the ED, she went home.  Because she had told that her employment was terminated, she did not report to work that week.

46.     On May 7, 2022, Dr. Pak was again notified that she had been terminated from the Neurology Residency Program.  Dr. Pak requested an appeal of the decision.

### D. Albany Med Rescinds Dr. Pak's Termination

47.    On May 25, 2022, Dr. Pak learned that Dr. Amory had rescinded his decision to terminate Dr. Pak before the appeal process began.  Dr. Amory and Dr. Robeson asked to meet with Dr. Pak on June 1, 2022.

48.    On May 26, 2022, Dr. Amory and Dr. Robeson sent Dr. Pak a letter stating she had failed to meet the terms of the remediation plan, and that remediation would be extended until September 1, 2022.  (Dr. Pak's remediation was later extended until December 1, 2022.)

49.    On June 1, 2022, Dr. Pak met with Dr. Robeson, Dr. Amory, and others from Albany Med to discuss her reintegration into the Neurology Residency Program and to update her remediation plan, which included monthly meetings with Dr. Robeson to directly review feedback and make concrete goals for the next month.  During this meeting, Dr. Amory informed Dr. Pak that he believed Albany Med should not accommodate her, but instead *she* should somehow change to accommodate Albany Med.  Dr. Robeson suggested that Dr. Pak find another residency program.

50.    Also during the June 1 meeting, Dr. Pak was informed that she would not be allowed to directly care for patients, and that she could only shadow other physicians.  Dr. Amory claimed that this arrangement would be in place while the Albany Med Human Resources Department figured out appropriate accommodations for Dr. Pak.  This arrangement did not make sense to Dr. Pak because her clinical care had never been alleged to be deficient.

51.    Unfortunately, Dr. Amory did not adequately communicate this new arrangement to the Neurology faculty, because some faculty members thought that by not providing direct patient care, Dr. Pak was failing to fulfill her responsibilities.

52.    Dr. Pak also faced renewed hostility from her fellow residents when she returned to the program.  Because Dr. Pak had been terminated shortly after Dr. Robeson's April 27 email regarding items missing from the resident room, many residents were left to believe that Dr. Pak had been terminated for theft, but that she had been reinstated because she had not been given an accommodation for her disability.  Indeed, Dr. Pak quickly learned that she had become known among many residents as a thief.  Dr. Amory and Dr. Robeson did nothing to rehabilitate Dr. Pak's maligned reputation among her fellow residents that had resulted from the false accusations and disability discrimination.  In fact, when residents asked Dr. Robeson why Dr. Pak had been dismissed from the program, Dr. Robeson obliquely told them that she (Dr. Robeson) had information that residents are not privy to.  This response further reinforced the suspicion among many residents that Dr. Pak had been guilty of theft.

53.    Given the timing of Dr. Pak's termination, it would have been appropriate for Dr. Robeson to clarify that Dr. Pak had *not* been terminated in connection with the missing items and to direct Dr. Pak's fellow residents to treat her fairly and respectfully.  The failures to ensure that Dr. Pak was not targeted or bullied contributed to the hostile work environment at Albany Med.

54.    On July 22, 2022, Albany Med's Human Resources Department sent a memo to Dr. Pak, explaining several accommodations that would be provided at work, including intermittent time off for medical appointments and the assistance of an employment specialist to observe Dr. Pak's meetings with Dr. Robeson and provide feedback on social cues and subtleties in communication.

55.    Unfortunately, many of these accommodations were never provided in a meaningful or prolonged manner.  For example:

a.  Albany Med stated that it would provide Dr. Pak with intermittent time off to attend mental health appointments.  However, Dr. Pak missed several appointments with her psychiatrist because the residents covering her shift did not arrive on time;

b.  Albany Med approved Dr. Pak's request that an employment specialist attend monthly performance meetings with Dr. Pak, Dr. Robeson, and HR.  However, Dr. Pak's assigned employment specialist was only permitted to attend certain meetings and was excluded from others;

c.  Albany Med approved Dr. Pak's request for a faculty member who could provide guidance, feedback, and support.  However, Dr. Pak's assigned faculty mentor simply advised Dr. Pak to look for other residency programs;

d.  Although Albany Med had approved Dr. Pak's request to attend didactic teaching conferences virtually, Dr. Pak was not provided with reliable access to remote participation, so she had to attend many of the didactics in person.

e.  Although Albany Med approved Dr. Pak's request for a job coach, when the coach asked for permission to observe Dr. Pak's interactions with co-workers at the hospital as part of the coaching, Dr. Amory and Dr. Robeson refused to allow the job coach on-site.

56.  Albany Med accordingly failed to follow through on its accommodations.

57.  Dr. Pak's monthly meetings with Dr. Robeson began in August 2022.  That month, Dr. Robeson noted that Dr. Pak's colleagues believe she is a hard worker and commended her on "the timeliness of [her] documentation."  She also congratulated Dr. Pak for having an article accepted to the Journal of Neurology Research.  In September 2022, Dr.

13

Robeson commented that Dr. Pak is "hardworking, dedicated to [her] patients and very compassionate." She also noted "improvements in [Dr. Pak's] presentations and write-ups."

58. Dr. Pak received overwhelmingly positive feedback from attending neurologists at Albany Med from mid-July to mid-October 2022. For example, on October 9, 2022, Dr. Richard Jackson described Dr. Pak as "very punctual," "organized," and "attentive in rounds." He further wrote that "patients and families always appreciated her dedication" and that she "stayed late daily" and "researched cases after hours." In September 2022, Dr. Sara Radmard noted significant improvements over the course of one of Dr. Pak's rotations, stating that Dr. Pak was able to incorporate feedback to edit and improve her write-ups, and that her assessments "became more comprehensive."

59. Despite these successes and improvements, Dr. Robeson, who by now had assumed the position of Program Director, continued to discriminate against Dr. Pak and hold her back in her career. For example, during a meeting with Dr. Pak in September 2022, Dr. Robeson reported seeing "inconsistencies" in Dr. Pak's autism diagnosis. Dr. Robeson gave specific examples, such as Dr. Pak spending time in the resident workroom despite her previous complaints on sensory overload from loud noise and bright intensity of background light. (Unfortunately, when Dr. Pak sought an accommodation by requesting a low stimulus environment, Albany Med refused to provide her with an office and the only other workspace offered was in a different building and was even louder and brighter. Thus, she was forced to work in the resident workroom.) Dr. Robeson cited this as a "severe deficiency" that Dr. Pak would need to address in order to remain in the residency program.

60.    Based on this interaction with Dr. Robeson, Dr. Pak was concerned that she might be disciplined based on her disability.  Dr. Pak contacted Albany Med HR to report this concern, but HR did not address the issue.

61.    Dr. Pak had been scheduled to advance to the PGY-3 year on September 15, 2022, having started the Neurology Residency Program at Albany Med in a PGY-2 year in September 2021.  However, in August 2022, Albany Med denied Dr. Pak the advancement, and instead presented her with a three-month contract that extended her PGY-2 year until December 2022.  At Albany Med, according to one of the Neurology Chief Residents, residents are never given three-month contracts.  Residents without disabilities were given annual contracts.  It was apparent to Dr. Pak that she was being singled out due to her disability.

62.    Dr. Pak appealed the decision to extend her PGY-2 year, which would delay her graduation and her ability to advance in her career as a neurologist.

**E.  Dr. Pak Complains About Discrimination and is Retaliated Against Immediately**

63.    On October 5, 2022, Dr. Pak met with Dr. Alan S. Boulos, Dean of the Albany Med Medical College, in connection with her appeal of the decision to extend her PGY-2 contract.

64.    During the meeting, Dr. Pak complained that she was being discriminated against based on her disability, that she had endured severe bullying by her fellow residents and program leadership alike, that her reputation and mental well-being had been irreparably damaged by her unjust termination in May, and that the three-month contract given to her indicated that she was being set up for failure.

65.    Dean Boulos expressed concern and said he would contact the Neurology Residency Program Director to further investigate Dr. Pak's complaints.

15

66.     A few days later after Dr. Pak complained, Dr. Robeson falsely accused Dr. Pak

of mishandling a patient's care, leading to Dr. Pak's termination from the Residency Program.

Dr. Robeson's vaguely alleged "patient safety concern that led to patient harm" was yet another

false accusation.  Dr. Robeson accused Dr. Pak of changing an order remotely from home and of

prescribing medications for the patient, both of which are directly contradicted by the patient's

medical records.

67.     Although the patient at issue, who had previously been under Dr. Pak's care, had

an adverse event at the hospital, Dr. Pak was in no way involved or responsible for the situation.

In fact, Dr. Pak was not even at the hospital when the critical safety event took place, on October

8, 2022.  Furthermore, the events leading up to the patient safety concern – including the

patient's intubation, the ordering and administration of certain medications, and the

discontinuation of hypertonic saline for the patient – were all performed by other doctors at

Albany Med, and not Dr. Pak.

68.     Dr. Robeson's demonstrably false allegation indicates that Dr. Robeson, having

failed to terminate Dr. Pak in May 2022, knew that the only way to terminate her would be by

accusing her of endangering patient safety.

69.     By letter dated October 17, 2022, Dr. Pak was terminated from the Albany Med

Neurology Residency Program.  Dr. Robeson falsely stated in the letter that Dr. Pak's

"deficiencies in Interpersonal Communication Skills and Patient Care have contributed to patient

harm."

70.     Even if Dr. Pak had been at fault with this patient, in the past, other residents in

the neurology department who had endangered patients were either placed on leave or were

asked to repeat a year of the residency program.  Each of those residents – who, notably, do not

have disabilities – then successfully reentered the program.  Dr. Pak was treated worse because of her disability.

71.     The other alleged bases of Dr. Pak's termination – vaguely stated as "ongoing deficiencies" – were alleged issues that, if true, are symptomatic of Dr. Pak's autism, such as "miscommunication with patients, staff and peers" and "frequent and inappropriate calls and texts to peers and faculty members," all of which could have been addressed by minor and reasonable accommodations that Albany Med refused to consider or implement.  Such accommodations – including, but not limited to, a department-wide training on working with colleagues with autism and meaningful, sustained faculty and peer support – would not have imposed an undue hardship on Albany Med.

72.     Dr. Pak appealed her termination internally to the Albany Graduate Medical Education ("GME") office.  Dr. Pak presented rebuttal evidence and explained her disability, which she presented to a residency dismissal ad hoc committee.

73.     Dr. Robeson also presented evidence to the ad hoc committee, which was set forth in a letter dated October 28, 2022.  This letter contains numerous falsehoods and reveals irrelevant information about Dr. Pak that was intended to prejudice the ad hoc committee against Dr. Pak.  For example, Dr. Robeson's letter provides unnecessary and irrelevant details regarding Dr. Pak's prior medical training and falsely states that, after Dr. Pak's remediation began in early 2022, the residency program "saw little improvement," which directly contradicts the feedback that Dr. Amory and Dr. Robeson gave to Dr. Pak.  Furthermore, Dr. Robeson's statement that Dr. Pak "had an extended leave of absence from our program from late April through July of 2022" is simply not true and was likely included to damage Dr. Pak's reputation with the committee.

74.    The ad hoc committee affirmed Dr. Pak's dismissal, which she appealed to the Vice Dean and eventually to Dean Boulos.

75.    Dr. Pak's appeals were unsuccessful.  The decision to terminate her was confirmed on January 19, 2022.

**F. Albany Med's Refusals to Accept Training on Working with People with Autism**

76.    During Dr. Pak's tenure in the residency program, she made numerous concerted efforts to help educate her colleagues and supervisors in the Neurology Department about working with adults with autism, including patients and coworkers.

77.    In February 2022, Dr. Pak emailed Angela Antonikowski, Albany Med's Chief Health Equity, Diversity & Inclusion Officer.  Dr. Pak complained to Dr. Antonikowski about specific instances of disability discrimination she had endured from other residents, including an instance where a resident had denied that a patient with autism was truly autistic, stating that the patient was "just making an excuse to be a jerk."  Dr. Pak also relayed to Dr. Antonikowski that another resident had comments that "people grow out of autism before hitting puberty" and that autism does not exist for adolescents or adults.  Dr. Pak was shocked to hear her fellow neurology residents making such cruel and ignorant pronouncements.

78.    Dr. Pak asked Dr. Antonikowski, in her capacity as diversity and inclusion officer, to help educate her fellow residents on individuals with developmental disorders.  Dr. Antonikowski did not respond to this request.

79.    After the events of April 2022, Dr. Pak redoubled her efforts.  Her goal was to connect senior administrators – such as Albany Med President and CEO Dr. Dennis McKenna, Associate Dean Dr. Joel Bartfield, and others – with resources that would help them understand

how individuals, such as Dr. Pak, can be misunderstood in a work environment and to learn strategies for effective communication. For example:

a. In May 2022, Dr. Mary Doherty, the founder of Autistic Doctors International ("ADI"), a peer support and advocacy group for autistic doctors with a membership of over 500 autistic doctors, contacted Dr. McKenna to offer support and resources to Albany Med. Dr. McKenna did not respond.

b. Also in May 2022, Susan Hill from CPH contacted Dr. Bartfield to speak about Dr. Pak. Dr. Bartfield declined to speak with anyone from CPH.

c. Having received no response from Dr. Bartfield, Ms. Hill then contacted Albany Med Human Resources to offer additional support to Dr. Pak. The HR Department contacted supervisors in the Neurology Department to schedule a training on how to work with employees with ASD. The Neurology Department declined the training.

d. In September 2022, Dr. Doherty from ADI contacted Albany Med Medical College Dean Dr. Alan Boulos in order to help provide support and resources for Dr. Pak. Dr. Boulos did not respond. According to Dr. Doherty, Albany Med is the only residency program that has failed to accept her offer to provide support and resources to residents with Autism.

80. In October 2022, Dr. Pak sent an email to Dr. Bartfield, offering to connect him with David Caudel, an expert in Autism and the Associate Director of the Frist Center for Autism and Innovation at Vanderbilt University. Dr. Bartfield did not respond.

81. As a direct result of Albany Med's conduct, Dr. Pak has suffered damages.

## FIRST CLAIM FOR RELIEF
(Disability Discrimination in Violation of Rehabilitation Act)

82.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

83.    At all times relevant to this action, Albany Med has been a recipient of federal financial assistance.  This federal financial assistance includes but is not limited to Medicare/Medicaid reimbursement.

84.    Moreover, Albany Med is principally engaged in the business of providing health care.

85.    Dr. Pak was an otherwise qualified individual with a disability.

86.    Albany Med violated Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, by failing to accommodate Dr. Pak's disability and subjecting Dr. Pak to discrimination in employment on account of her disability.

87.     Solely by reason of Dr. Pak's disability, she was excluded from employment and educational opportunities at Albany Med and was wrongfully subjected to discrimination.

## SECOND CLAIM FOR RELIEF
(Retaliation in Violation of Rehabilitation Act)

88.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

89.    At all times relevant to this action, Albany Med has been a recipient of federal financial assistance.  This federal financial assistance includes but is not limited to Medicare/Medicaid reimbursement.

90.     Albany Med retaliated against Dr. Pak based on her exercise of her rights under

the Rehabilitation Act and her opposition to disability discrimination in violation of the Act.

### THIRD CLAIM FOR RELIEF
(Disability Discrimination in Violation of New York State Human Rights Law)

91.     Plaintiff repeats and realleges the allegations contained in the preceding

paragraphs above as if fully set forth herein.

92.     Albany Med failed to accommodate Dr. Pak's disability and discriminated against

her in the terms and conditions of her employment in violation of the New York State Human

Rights Law.

### FOURTH CLAIM FOR RELIEF
(Retaliation in Violation of New York State Human Rights Law)

93.     Plaintiff repeats and realleges the allegations contained in the preceding

paragraphs above as if fully set forth herein.

94.     Albany Med retaliated against Dr. Pak because of her opposition to disability

discrimination in violation of the New York State Human Rights Law.

### <u>JURY DEMAND</u>

Plaintiff demands trial by jury of all issues as of right by a jury.


**WHEREFORE**, Plaintiff demands judgment against Defendant:

A.  Reinstating Plaintiff's employment;

B.  Awarding Plaintiff lost wages and compensatory damages including damages for

    emotional distress;

C.  Awarding Plaintiff punitive damages;

D.  Awarding reasonable attorneys' fees, costs, and expenses; and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

Dated:      New York, New York
            March 24, 2023

GISKAN, SOLOTAROFF & ANDERSON LLP

            _/s/ Jason L. Solotatoff____
By:     Jason L. Solotaroff
        Amy E. Robinson
        90 Broad Street, 2nd Fl.
        New York, New York 10004
        (646) 964-9640
        jsolotaroff@gslawny.com
        arobinson@gslawny.com
        *Attorneys for Plaintiff*