GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Fl.
New York, New York 10004
(646) 964-9640
Jason L. Solotaroff
Amy E. Robinson
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

STELLA PAK, M.D.,

Plaintiff,

Civil Action No.:
1:23-cv-00378-DNH-DJS

-against-

ALBANY MED HEALTH SYSTEM,

Defendant.
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATMENT ........................................................................................1

STATEMENT OF FACTS ........................................................................................2

I. Dr. Pak's Autism Spectrum Disorder ........................................................................................2

II. Dr. Pak's Initial Success in the Residency Program ........................................................................................2

III. Dr. Pak is Discriminated Against in the Neurology Residency Program ..........................5

IV. Albany Med Unlawfully Terminates Dr. Pak ........................................................................................14

V. Albany Med's Refusals to Accept Autism Related Resources ........................................17

VI. Albany Med Continues to Discriminate and Retaliate Against Dr. Pak After Her Termination by Providing a False and Defamatory Final Evaluation ............................19

VII. Dr. Pak's Efforts to Obtain Another Residency Position ................................................21

LEGAL ARGUMENT ........................................................................................22

I. THE COURT SHOULD REINSTATE DR. PAK AND ENJOIN ALBANY MED FROM DISCRIMINATING OR RETALIATING AGAINST HER; IN THE ALTERNATIVE, THE COURT SHOULD ORDER ALBANY MED TO CORRECT ITS FINAL EVALUATION SO THAT DR. PAK MAY TRANSFER TO ANOTHER RESIDENCY PROGRAM…………………………………………………………………...22

A The Applicable Legal Standard........................................................................................22

B. Dr. Pak Will be Irreparably Harmed Prior to a Resolution on the Merits Absent a Court-Ordered Injunction........................................................................................22

C. Dr. Pak is Like to Succeed on the Merits of her Claims ............................................24

D. The Balance of the Hardships Tips in Dr. Pak's Favor .............................................25

E. The Public Interest Would Not be Disserved by the Issuance of an Injunction..........25

CONCLUSION........................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Beckhorn v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
2019 U.S. Dist. LEXIS 7781 (W.D.N.Y January 16, 2019) ........ 25

*Doe v. Pa. State Univ*.,
276 F. Supp. 3d 300 (M.D. Pa. 2017) ........ 24

*Doe v. Rensselaer Polytechnic Inst.*,
No. 1:18-CV-1374 (FJS/CFH), 2019 U.S. Dist. LEXIS 5296 (N.D.N.Y. Jan. 11, 2019) ........ 22

*Doe v. Rensselaer Polytechnic Inst.*,
1:20-CV-1185, 2020 U.S. Dist. LEXIS 191676 (N.D.N.Y. Oct. 16, 2020) ........ 23

*Fenje v. Feld,*
2002 U.S. Dist. LEXIS 9492 (N.D. Ill. May 28, 2002) ........ 24

*Maczaczyj v. State of N.Y.*,
956 F. Supp. 403 (W.D.N.Y. 1997) ........ 23

*North American Soccer League LLC v. United States Soccer Federation, Inc.*,
883 F.3d 32 (2d Cir. 2018) ........ 22

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*,
769 F.3d 105 (2d Cir. 2014) ........ 22

*Ramsay v. Nat'l Bd. of Med. Exam'rs,*
968 F.3d 251 (3d Cir. 2020) ........ 24

*Sellers v. Univ. of Rio Grande*,
838 F. Supp. 2d 677 (S.D. Ohio 2012) ........ 23

**Statutes**

29 U.S.C.S. § 794 ........ 1

N.Y. Exec. Law § 292 ........ 1

## PRELIMINARY STATEMENT

Plaintiff Stella Pak, M.D., ("Dr. Pak") was a second-year resident in the Neurology Medical Residency Program at Defendant Albany Med Health System ("Albany Med") until her unlawful termination from the program in January 2023.

Dr. Pak has autism spectrum disorder ("ASD"). After Dr. Pak disclosed her disability to the neurology residency program, Albany Med created a hostile work environment for Dr. Pak, failed to accommodate her disability, and ultimately terminated her from the residency program because of her disability and in retaliation for complaining about unequal treatment. Even after her termination, Albany Med continued its discriminatory and retaliatory conduct by preparing a final summative evaluation which mischaracterizes her performance in the residency program, disparages her and will make it extremely difficult, if not impossible, for her to obtain another residency position or a license to practice medicine. Albany Med is thus irreparably damaging Dr. Pak's medical career. Without court intervention, the damage will continue unabated.

Based on Albany Med's violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.S. § 794, and the New York State Human Rights Law, N.Y. Exec. Law § 292,[1] Dr. Pak is entitled to relief from this Court. This relief must be immediate as, absent a preliminary injunction reinstating Dr. Pak to Albany Med's program, or an order directing Albany Med to immediately correct her final summative evaluation, Dr. Pak will be prevented from completing her medical training, which will permanently derail Dr. Pak's medical career.

[1] Dr. Pak has also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Americans with Disabilities Act ("ADA"), and has been informed the EEOC is investigating. After the EEOC issues a Notice of Right to Sue, Dr. Pak intends to amend her complaint to include causes of action under the ADA.

## STATEMENT OF FACTS

Dr. Pak received a Bachelor of Science degree from Austin Peay State University in 2013.[2] She graduated from University of Toledo College of Medicine in 2017, where she received the Presidential Scholarship, a merit-based, full scholarship that is given to the top two students in each graduating class.[3]

### I. Dr. Pak's Autism Spectrum Disorder

When Dr. Pak was approximately three years old, she was first diagnosed with autism spectrum disorder ("ASD").[4] During college and medical school, Dr. Pak received accommodations for her autism.[5] Dr. Pak's autism manifests itself in several ways. First, Dr. Pak has a tendency to be overly inclusive in her communications, and sometimes provides excessive details. Second, Dr. Pak is very literal in her interpretation of language. It can be challenging for Dr. Pak to pick up on sarcasm, innuendo, or subtleties. Finally, when faced with a surprise or sudden new information, Dr. Pak has difficulty displaying the appropriate emotion in the moment. She requires time to process the information and to react accordingly. Dr. Pak's autism has not prevented her from excelling both academically and clinically.[6]

### II. Dr. Pak's Initial Success in the Residency Program.

Dr. Pak entered the four-year Neurology Residency Program at Albany Med in September 2021.[7] Because Dr. Pak had prior post-graduate medical training, she entered the Albany Med Neurology Residency Program in the second year of the program ("PGY-2").[8]

---

[2] Declaration of Stella Pak, M.D., in Support of Order to Show Cause ("Pak Decl.") ¶ 2.
[3] Pak Decl. ¶ 3.
[4] *Id.* at ¶ 5.
[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶ 8.
[8] *Id.*

During the residency program, several of the faculty evaluated Dr. Pak as having satisfactory performance and showing the improvement expected of a physician in a residency training program.[9] In an evaluation from January 2022, Dzintra Celmins, M.D., a faculty member, wrote that Dr. Pak was "very strong in patient management … quick and efficient …and really cares about her patients well-being."[10] Dr. Celmins noted that Dr. Pak's "neurological knowledge and practical skills need some improvement, but it is expected early in her training."[11] Dr. Celmins concludes that "with some minor improvements and encouragement, [Dr. Pak] will successfully finish our residency program."[12] Also in January 2022, the program director at the time, Dr. Colum Amory emailed Dr. Pak stating "[i]n general, your documentation is very detailed and well thought out … In particular, your plan is well written." Dr. Amory went on to give Dr. Pak suggestions for dealing with particular neurology issues and concluded by stating "keep up the good work."[13] In July 2022, another faculty member, John Lansing, D.O., evaluated Dr. Pak as performing at levels between "3" and "4" on a scale of 1-5 (five being the best) in 10 of the 13 categories on an evaluation form.[14] In August 2022, Dr. Amory complimented Dr. Pak on her dedication to her patients, medical knowledge, teaching of medical students and concluded that he could rely on her to take care of straightforward patients.[15] In September 2022, Dr. Octavian Adam gave Dr. Pak the following feedback by email after working with her for a week: "I have

---

[9] Dr. Pak also excelled at the research aspect of her training. She was one of only two residents who presented projects to Albany Med's annual research conference in 2022 and was the only resident who presented research both inside and outside the hospital for the academic year 2021-2022. *See* Pak Dec. ¶ 9. In 2022, Dr. Pak published two articles and seven new abstracts. *Id.*
[10] *See* New Innovations Evaluations (attached as Exhibit A to the Solotaroff Dec.) at 8.
[11] Ex. A at 8.
[12] *Id.*
[13] Email from Dr. Amory to Dr. Pak, Jan. 10, 2022 (attached as Exhibit B to the Solotaroff Dec.).
[14] See Ex. A at 19-24.
[15] Email attachment from Dr. Amory to Dr. Pak, Aug. 30, 2022 (attached as Exhibit C to the Solotaroff Dec.).

had no major concerns. [Dr. Pak's] admissions and documentation were appropriate."[16] For a rotation in October 2022, Richard Jackson, M.D., characterized Dr. Pak as "very punctual [and] organized" and commented that "patients and families always appreciated her dedication … attentive … thorough … stayed late daily … researched cases after hours."[17] Dr. Jackson evaluated Dr. Pak as performing at levels 2 and 3 on the 1-5 scale and performing at the level of an early career neurology resident.[18]

Most significantly, even faculty members who had criticisms of Dr. Pak's performance noted she was improving. For example, John Pugh, M.D., evaluated Dr. Pak in January 2022 and April 2022. Dr. Pugh's evaluations reflect Dr. Pak's improvement during this period and in the April 2022 evaluation, he characterized her as "exceptionally hard working, diligent and caring … going the extra mile in patient care," and that be believed that she could improve "with time and mentoring."[19] Marjorie Bunch, M.D., who evaluated Dr. Pak for a July 2022 rotation, commented that Dr. Pak's performance in reading EEG exams improved during the rotation.[20]

Moreover, many of the criticisms of Dr. Pak related to characteristics that were directly related to her disability. For example, Dr. Pugh's main criticisms of her were deficiencies in her communication ability.[21] Similarly, Laura Risley, M.D., a faculty member who evaluated Dr. Pak in April 2022, praised her for being "enthusiastic [and] a hard worker," but criticized her communication style as "abrupt."[22] In a May 2022 evaluation by James Wyant, M.D., he stated that her "most glaring weakness is her difficulty with communication."[23]

---

[16] Email from Dr. Adam to Dr. Pak, Sept. 23, 2022 (attached as Exhibit D to the Solotaroff Dec.).
[17] See Ex. A at 9-13.
[18] *Id.*
[19] Ex. A at 25, 26.
[20] Ex. A at 6-7.
[21] Ex. A at 26.
[22] Ex. A at 32.
[23] Ex. A at 43.

## III. Dr. Pak is Discriminated Against in the Neurology Residency Program.

Soon after Dr. Pak joined the Residency Program in September 2021, some of the other residents began to antagonize her, spread baseless rumors about her, and bully her.[24] From what Dr. Pak heard, this hostility had nothing to do with her clinical performance but, like much of the criticism from the faculty, was based on Dr. Pak's interpersonal communication style – a manifestation of her autism.[25] For example, on one occasion, Dr. Pak was overly literal in her interpretation of one of the Chief Residents' instructions, which led to criticism of Dr. Pak.[26]

Despite Dr. Pak's satisfactory performance, Albany Med unfairly, and without any prior verbal or written warning, placed her on a remediation plan in January 2022.[27] The remediation plan had four elements: patient care/medical knowledge; system based practice; professionalism and interpersonal skills. However, the requirements of the plan all involved Dr. Pak's interpersonal and communication skills. Even for the patient care/medical knowledge component, the remediation plan required Dr. Pak to better consult with her colleagues.[28] Notably, there were no accommodations offered Dr. Pak at this time.[29]

Dr. Amory, the Program Director, was direct in conveying his bias against doctors with autism: he expressed concern about Dr. Pak's ability to function as a physician, given her diagnosis.[30] Dr. Amory instructed that the remediation plan include an independent psychiatric evaluation.[31] The ordering of an evaluation made no sense; Dr. Pak was already voluntarily

---

[24] Pak Decl. ¶ 13.
[25] *Id.*
[26] *Id.* at ¶ 15.
[27] Notice of Remediation, Jan. 22, 2022 (attached as Exhibit E to the Solotaroff Dec.).
[28] *Id.*
[29] Pak Decl. ¶ 16.
[30] *Id.*
[31] *Id.*

receiving mental health treatment,[32] and there were no doubts about her competency to perform her work duties.[33] If Albany Med's was truly invested in helping Dr. Pak improve her communication skills, then it should have provided appropriate support to address them.

Dr. Amory chose the Committee for Physician Health ("CPH") to arrange for the evaluation.[34] In February and March 2022, Dr. Pak met with Dr. Abigail J. Herron, the psychiatrist selected by CPH to perform the evaluation.[35] Dr. Herron found Dr. Pak competent to perform the essential functions of her job but – to no one's surprise – noted that she has communication and social issues, which she should work on, and that she should continue with her psychiatric appointments.[36] Crucially, Dr. Herron noted that, according to Dr. Amory, "there have been no complaints from patients, and there were no direct concerns raised about the quality of care [Dr. Pak] has provided."[37] Dr. Herron was also told in March 2022 that "there had been an improvement and Dr. Pak had received positive feedback from an attending."[38]

As part of the remediation plan and pursuant to the recommendation of Dr. Herron, Dr. Pak attempted to attend weekly appointments with a psychiatrist and a clinical psychologist. However, the Neurology Department program leadership, along with Dr. Pak's fellow residents in the Neurology Department, many of whom were already antagonistic to her, did nothing to help facilitate Dr. Pak's attendance at her mandated psychiatric appointments.[39] Indeed, the Chief Residents told Dr. Pak she could not leave the hospital to attend her therapy appointments

---

[32] Pak Decl. ¶ 17.
[33] *Id.* at ¶ 16.
[34] *Id.*
[35] *Id.* at ¶ 17.
[36] Abigail J. Herron, D.O., Independent Medical Examination, April 1, 2022 ("Herron Report") (attached as Exhibit F to the Solotaroff Dec.) at 6.
[37] *Id.* at 2.
[38] *Id.* at 5.
[39] Pak Decl. ¶¶ 23-26.

privately, so for several weeks Dr. Pak was forced to conduct the appointments by phone at the nurses' station of the hospital.[40] Neither Dr. Pak nor her therapist were comfortable with this due to the lack of privacy at the nurses' station, which resulted in Dr. Pak missing several appointments.[41] Accordingly, Albany Med failed to effectively provide an accommodation for Dr. Pak that its own evaluator had mandated as part of remediation.

In March and April 2022, Dr. Herron and Dr. Amory advised Dr. Pak to divulge her autism diagnosis to some of her coworkers to gain their support.[42] This strategy backfired badly: After Dr. Pak disclosed her diagnosis, certain residents began to claim that they did not trust her; one resident told her that "autism is only for little children" and that "people grow out of it."[43] Meanwhile, Dr. Robeson, who at that time was gradually assuming Dr. Amory's responsibilities as Program Director, suggested that Dr. Pak find another specialty.[44]

Despite these challenges, throughout the spring of 2022, as indicated by the evaluations, Dr. Pak's performance was satisfactory. When Dr. Pak sought out the Program Directors in March and April of 2022 to inquire about her progress, Dr. Amory noted that Dr. Pak's clinical performance and interpersonal skills were improving,[45] and in early April 2022, and Dr. Robeson informed Dr. Pak that there had been no complaints about her.[46]

On April 14, 2022, Dr. Pak asked one of the chief residents, Dr. Amit Shetty, to cover for her for 30 minutes so she could attend an appointment with her psychiatrist.[47] Dr. Shetty became

---

[40] Pak Decl. ¶ 19.
[41] *Id.*
[42] *Id.* at ¶ 20.
[43] *Id.* at ¶ 21.
[44] *Id.* at ¶ 20.
[45] *Id.* at ¶ 22.
[46] *Id.*
[47] *Id.* at ¶ 23.

angry and told her would be bringing up the issue with program leadership because it was not fair to him and the other residents.[48]

In response to this incident, on April 18, 2022, Dr. Pak called Dr. Amory to discuss an explicit accommodation that would require the program to provide coverage to enable her to attend her weekly appointments with her psychiatrist and clinical psychologist.[49] Dr. Amory did not offer such an accommodation and instead, merely suggested that Dr. Pak send an email to her colleagues referencing her autism diagnosis and requesting their support.[50] Following Dr. Amory's advice, Dr. Pak disclosed additional information regarding her diagnosis to her colleagues and explained why it was important for her to attend weekly medical appointments.[51]

On April 25, 2023, while working a shift at the hospital, Dr. Pak became ill as a result of exposure to a patient with norovirus.[52] She developed a fever of 103 degrees and experienced other severe symptoms of norovirus.[53] Dr. Pak called the chief resident in charge of scheduling, who instructed her to go home and who sent in a back-up resident to cover for Dr. Pak.[54] As Dr. Pak was leaving the hospital, Dr. Shetty scolded Dr. Pak for leaving the hospital, accusing her of stranding her team and only looking out for herself.[55] As Dr. Pak was leaving, Dr. Shetty told her he was going to report her to program leadership.[56]

The following day, April 26, 2022, Dr. Pak was told not return to work, but to attend a meeting with Dr. Amory and Dr. Robeson on April 28, 2022.[57] At that meeting, Dr. Amory and

---

[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.* at ¶ 26.
[52] Pak Decl. ¶ 27.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.* at ¶ 28.

Dr. Robeson told Dr. Pak that she was being terminated from the Neurology Residency Program because she had not been complying with the social training aspect of her remediation plan.[58] Additionally, Dr. Amory and Dr. Robeson aggressively questioned Dr. Pak about theft and vandalism.[59] Dr. Amory and Dr. Robeson strongly implied that Dr. Pak was responsible for the theft and vandalism.[60] These were and are completely baseless implications, as there was no evidence suggesting Dr. Pak had stolen or damaged anything and Dr. Pak denied all allegations of wrongdoing.[61]

Dr. Amory, supported by Dr. Robeson, stated that several of the neurology residents suspected Dr. Pak and that "what matters is that some people here think that you did it."[62] Dr. Pak became extremely upset upon hearing this, began to cry, and expressed that she did not feel much hope in her career as a doctor.[63] In response, Dr. Amory ordered that Dr. Pak must be taken to the Emergency Department ("ED").[64] When Dr. Pak clarified she had no intention to harm herself or others, Dr. Amory threatened to call security and asked Dr. Pak if she wanted to make a scene.[65] Dr. Pak begged Dr. Amory to allow her to go to a hospital other than Albany Med, as she did not want the attending physicians, residents, and nurses – her teachers, fellow students, and colleagues – to see her being taken to the ED.[66] Dr. Amory refused and he and Dr. Robeson then forced Dr. Pak to sit in a wheelchair and took her to the Albany Med ED against

[58] *Id.*; *see also* Letter from Dr. Amory to Dr. Pak, Apr. 28, 2022 (attached as Exhibit G to the Solotaroff Dec.).
[59] Pak Dec. ¶ 29.
[60] *Id.*
[61] *Id.*
[62] *Id.* at ¶ 30.
[63] *Id.* at ¶ 31.
[64] *Id.*
[65] *Id.*
[66] *Id.*

her wishes.[67] At the Albany Med ED, the attending physician said he had no ground to hold Dr. Pak against her will, as she is a competent adult with no indication of suicidal or self-injurious ideation.[68] This event, which is another example of the abusive and hostile work environment that Dr. Pak was subjected to on account of her disability, deeply traumatized Dr. Pak.[69]

Soon after Dr. Pak was notified that she had been terminated from the Neurology Residency Program, she requested an appeal of the decision.[70] By letter dated May 25, 2022, before the appeal process began, Dr. Amory rescinded his decision to terminate Dr. Pak.[71] Instead, on May 26, 2022, Dr. Amory and Dr. Robeson sent Dr. Pak a letter stating she had failed to meet the terms of the remediation plan, and that remediation would be extended until September 1, 2022.[72] Significantly, the new remediation plan did not address the same topics as the January 2022 remediation plan. While the January plan required Dr. Pak to improve her system-based practice by speaking to a nurse and watching videos of how to call for a consult, that topic is not mentioned at all in the May plan.[73] In addition, while the medical knowledge aspect of the January plan required Dr. Pak to have a consult with the senior resident when on call, the May medical knowledge component required her to read independently.[74] This type of goalpost moving suggests that Albany Med was not attempting a good-faith remediation. Moreover, the bulk of what Dr. Pak was still being asked to do related to her communication style, which is of course a symptom to her disability.

---

[67] *Id.*
[68] *Id.* at ¶ 32.
[69] *Id.* at ¶ 33.
[70] *Id.* at ¶ 34.
[71] Letter from Dr. Amory, May 25, 2022 (attached as Exhibit H to the Solotaroff Dec.).
[72] May Notice of Remediation, May 26, 2022 (attached as Exhibit I to the Solotaroff Dec.).
[73] *Compare* Ex. E (January Notice of Remediation) *with* Ex. I (May Notice of Remediation).
[74] *Id.*

On June 1, 2022, Dr. Pak met with Dr. Robeson, Dr. Amory, and others from Albany Med.[75] During this meeting, Dr. Amory informed Dr. Pak that he believed Albany Med should not accommodate her, but instead *she* should somehow change to accommodate Albany Med.[76] Dr. Robeson suggested that Dr. Pak find another residency program.[77] Dr. Pak was also informed that she would not be allowed to directly care for patients, and that she could only shadow other physicians.[78] Dr. Amory claimed that this arrangement would be in place while the Albany Med Human Resources Department figured out appropriate accommodations for Dr. Pak.[79] According to a written summary that included some aspects of the meeting, the program leadership responded to Dr. Pak's request for training for the other residents to help them work with a resident with autism by stating "we do not think it would be appropriate for the residents to be lectured about how to work with Stella directly."[80]

Dr. Pak faced renewed hostility from her fellow residents when she returned to the program in July 2022. Because Dr. Pak had been terminated shortly after Dr. Robeson sent an email in late April to all Neurology Program residents regarding items missing from the resident room,[81] many residents believed that Dr. Pak had been terminated for theft, but that she had been reinstated because she had not been given an accommodation for her disability.[82] When residents asked Dr. Robeson why Dr. Pak had been dismissed from the program, Dr. Robeson obliquely told them that the Program Directors had information to which residents are not privy.[83] Dr. Pak

[75] Pak Decl. ¶ 37.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] Notes of June 1, 2022 Meeting (attached as Exhibit J the Solotaroff Dec.)
[81] Email from Dr. Robeson, April 27, 2022 (attached as Exhibit K to the Solotaroff Dec.)
[82] Pak Decl. ¶ 38.
[83] *Id.*

believes that this response further reinforced the suspicion among many residents that Dr. Pak had been guilty of theft.[84] On July 11, 2022, Dr. Pak emailed Ellen Cosgrove, Albany's Vice-Dean for Academic Administration seeking assistance with challenges arising from the hostile work environment.[85]

On July 22, 2022, Albany Med's Human Resources Department sent a memorandum to Dr. Pak, explaining several accommodations that would be provided at work, including intermittent time off for medical appointments and the assistance of an employment specialist to observe Dr. Pak's meetings with Dr. Robeson and provide feedback on social cues and subtleties in communication.[86] Unfortunately, many of these accommodations were never provided in a meaningful or consistent manner. For example:

a. Albany Med stated that it would provide Dr. Pak with intermittent time off to attend mental health appointments. However, Dr. Pak missed several appointments with her psychiatrist because the residents covering her shift did not arrive on time;[87]
b. Albany Med approved Dr. Pak's request that an employment specialist attend monthly performance meetings with Dr. Pak, Dr. Robeson, and HR. However, Dr. Pak's assigned employment specialist was only permitted to attend certain meetings and was excluded from others;[88]
c. Albany Med approved Dr. Pak's request for a faculty member who could provide guidance, feedback, and support. However, Dr. Pak's assigned faculty mentor simply advised Dr. Pak to look for other residency programs;[89]
d. Although Albany Med approved Dr. Pak's request for a job coach, when the coach asked for permission to observe Dr. Pak's interactions with co-workers at the hospital as part of the coaching, Dr. Amory and Dr. Robeson refused to allow the job coach on-site.[90]

---

[84] *Id.*
[85] Email to Ellen Cosgrove, July 11, 2022 (attached as Exhibit L to the Solotaroff Dec.).
[86] Memorandum to Dr. Pak from Katie Vandenburgh re "Request for Reasonable Accommodation," July 22, 2022 (attached as Exhibit M to the Solotaroff Dec).
[87] Pak Decl. ¶ 41.
[88] *Id.*
[89] *Id.*
[90] *Id.*

Albany Med accordingly failed to provide the proposed accommodations.

One aspect of the remediation plan was a monthly meeting between Dr. Pak and Dr. Robeson. According to a summary of the August 2022 meeting, Dr. Robeson stated at that time that Dr. Pak's colleagues believe she is a hard worker and commended her on "the timeliness of [her] documentation," and discussed some areas for improvement which generally concerned communication and time management [91] In the summary of the September meeting 2022, Dr. Robeson commented that Dr. Pak is "hardworking, dedicated to [her] patients and very compassionate."[92] She also noted "improvements in [Dr. Pak's] presentations and write-ups," and again discussed areas of improvement including a few unspecified "clinical concerns," along with communication issues.[93]

Despite Dr. Pak's adequate performance and improvements, Dr. Robeson, who by now had assumed the position of Program Director, continued to harass Dr. Pak about her disability. For example, during a meeting with Dr. Pak in September 2022, Dr. Robeson reported seeing "inconsistencies" in Dr. Pak's autism diagnosis.[94] Dr. Robeson gave specific examples, such as Dr. Pak spending time in the resident workroom despite her previous complaints of sensory overload from loud noise and bright background light.[95] Dr. Pak's decision to spend time in the resident workroom was the result of the program not providing Dr. Pak with an acceptable workspace.[96] Dr. Robeson cited this as a "severe deficiency" that Dr. Pak would need to address in order to remain in the residency program.[97] Based on this interaction with Dr. Robeson, Dr.

---

[91] Email from Dr. Robeson to Dr. Pak, August 3, 2022 (attached as Exhibit N to the Solotaroff Dec.).
[92] Email from Dr. Robeson to Dr. Pak, Sept. 16, 2022 (attached as Exhibit O to the Solotaroff Dec.).
[93] *Id.*
[94] Pak Decl. ¶ 43.
[95] *Id.*
[96] *Id.*
[97] *Id.*

Pak was concerned that she was still being discriminated based on her disability.[98] Dr. Pak contacted Albany Med HR to report this concern, but nothing was done.[99]

**IV. Albany Med Unlawfully Terminates Dr. Pak.**

Dr. Pak had been scheduled to advance to the PGY-3 year on September 15, 2022, having started the Neurology Residency Program at Albany Med in a PGY-2 year in September 2021.[100] However, on July 18, 2022, a week after Dr. Pak had reached out to Vice-Dean Cosgrove, Dr. Robeson notified Dr. Pak that she would not be moving to PGY-3 and instead presented her with a three-month contract that extended her PGY-2 year until December 2022.[101] At Albany Med, according to one of the Neurology Chief Residents, residents are never given three-month contracts.[102] Residents without disabilities were given annual contracts.[103] Dr. Pak was once again being singled out due to her disability.

Dr. Pak appealed the decision to extend her PGY-2 year.[104] On October 5, 2022, Dr. Pak met with Dr. Alan S. Boulos, Dean of the Albany Med Medical College, in connection with her appeal of the decision to extend her PGY-2 contract.[105] During the meeting, Dr. Pak complained that she was being discriminated against based on her disability, that she had endured severe bullying by her fellow residents and program leadership alike, that her reputation and mental well-being had been irreparably damaged by her unjust termination in May, and that the three-month contract given to her indicated that she was being set up for failure.[106]

---

[98] *Id.* at ¶ 44.
[99] *Id.*
[100] *Id.* at ¶ 45.
[101] Email from Dr. Robeson to Dr. Pak, July 18, 2022 (attached as Exhibit P to the Solotaroff Dec.); *see also* Contract Extension, Sept.-Dec. 2022 (attached as Exhibit Z to the Solotaroff Dec.)
[102] Pak Decl. ¶ 45.
[103] *Id.*
[104] *Id.* at ¶ 46.
[105] *Id.*
[106] *Id.*

In October 2022, Dr. Robeson falsely accused Dr. Pak of mishandling a patient's care, leading to Dr. Pak's termination from the Residency Program.[107] Dr. Robeson's vaguely alleged "patient care concern that led to patient harm" was yet another false accusation.[108] Although the patient at issue, who had previously been under Dr. Pak's care, had an adverse event at the hospital, Dr. Pak was in no way involved or responsible for the situation.[109] Dr. Pak was not even at the hospital when the critical safety event took place, on October 8, 2022, and had no involvement in the case at that time.[110] Dr. Robeson accused Dr. Pak of changing an order remotely from home and of prescribing medications for the patient, both of which are not true and are directly contradicted by the patient's medical records.[111] Furthermore, the events leading up to the patient safety concern – including the patient's intubation, the ordering and administration of certain medications, and the discontinuation of hypertonic saline for the patient – were all performed by other doctors at Albany Med, and not Dr. Pak.[112]

By letters dated October 17 and October 19, 2022, Dr. Pak was terminated from the Albany Med Neurology Residency Program.[113] Dr. Robeson falsely stated in her October 17 letter that Dr. Pak's "deficiencies in Interpersonal Communication Skills and Patient Care have contributed to patient harm."[114] Even if Dr. Pak had been at fault with this patient, in the past, other residents in the neurology department who had endangered patients were either placed on

---

[107] Pak Decl. ¶¶ 47-49.
[108] Letter from Dr. Robeson to the Residency Dismissal Ad Hoc Committee, Oct. 28, 2022 (attached as Exhibit Q to the Solotaroff Dec.).
[109] Pak Decl. ¶ 48.
[110] *Id.*
[111] *Id.*
[112] *Id.*
[113] Letter from Dr. Robeson to Dr. Pak, Oct. 17, 2022 (attached as Exhibit R to the Solotaroff Dec.); Letter from Dr. Bartfield to Dr. Pak, Oct. 19, 2022 (attached as Exhibit S to the Solotaroff Dec.).
[114] See Ex. R at 1.

leave or were asked to repeat a year of the residency program.[115] Each of those residents – who, notably, do not have disabilities – then successfully reentered the program.[116] Dr. Pak was once again singled out because of her disability.

Dr. Pak appealed her termination internally to the Albany Graduate Medical Education ("GME") office, which convened a residency dismissal ad hoc committee.[117] Dr. Pak presented rebuttal evidence and explained her disability to the committee.[118] Dr. Robeson also presented evidence to the ad hoc committee, which was set forth in a letter dated October 28, 2022.[119] This letter contains numerous falsehoods and reveals irrelevant information about Dr. Pak that was intended to prejudice the ad hoc committee against Dr. Pak. For example, Dr. Robeson's letter provides unnecessary and irrelevant details regarding Dr. Pak's prior medical training and falsely states that, after Dr. Pak's remediation began in early 2022, the residency program "saw little improvement," which directly contradicts the feedback that Dr. Amory and Dr. Robeson gave to Dr. Pak.[120] Furthermore, Dr. Robeson's statement that Dr. Pak "had an extended leave of absence from our program from late April through July of 2022" is simply not true and was likely included to damage Dr. Pak's reputation with the committee.[121] The ad hoc committee affirmed Dr. Pak's dismissal, which she appealed to the Vice Dean and eventually to Dean Boulos.[122] Dr. Pak's appeals were unsuccessful. The decision to terminate her was confirmed on January 19, 2023.[123]

---

[115] Pak Decl. ¶ 49.
[116] *Id.*
[117] *Id.* at ¶ 50.
[118] *Id.*
[119] Ex. Q.
[120] *Id.*
[121] *Id.*
[122] Letter from Ad Hoc Committee to Dr. Pak, Nov. 21, 2022 (attached as Exhibit T to the Solotaroff Dec.); Pak Decl. ¶ 51.
[123] Letter from Dean Boulos to Dr. Pak, Jan. 19, 2023 (attached as Exhibit U to the Solotaroff Dec.).

### V. Albany Med's Refusals to Accept Autism Related Resources

During Dr. Pak's tenure in the residency program, she made numerous concerted efforts to help educate her colleagues and supervisors in the Neurology Department about working with adults with autism, including patients and coworkers. In February 2022, Dr. Pak emailed Angela Antonikowski, Albany Med's Chief Health Equity, Diversity & Inclusion Officer.[124] Dr. Pak complained to Dr. Antonikowski about specific instances of disability discrimination she had endured from other residents, including an instance where a resident had denied that a patient with autism was truly autistic, stating that the patient was "just making an excuse to be a jerk."[125] Dr. Pak asked Dr. Antonikowski, in her capacity as diversity and inclusion officer, to help educate her fellow residents on individuals with developmental disorders.[126] Dr. Antonikowski did not provide a response to Dr. Pak's concerns.[127]

After the events of April 2022, Dr. Pak redoubled her efforts. In May 2022, at Dr. Pak's request, Dr. Mary Doherty, the founder of Autistic Doctors International ("ADI"), a peer support and advocacy group for autistic doctors, contacted Albany Med President and CEO Dr. Dennis McKenna to offer autism-related support and resources to Albany Med.[128] Dr. McKenna did not respond.[129] Also in May 2022, Susan Hill from New York's Committee for Physician Health contacted Albany Med Human Resources to "express [its] strong advocacy and support" for Dr. Pak.[130]

[124] Emails to and from Dr. Antonikowski, Feb. 4, 2022 (attached as Exhibit V to the Solotaroff Dec.). Print-outs of the emails are being provided, as Dr. Pak no longer has access to the native documents.
[125] *Id.*
[126] *Id.*
[127] Pak Decl. ¶ 53.
[128] Doherty Dec. ¶ 5.
[129] *Id.*
[130] Letter from Susan Hill to Sandra Castilla, VP of Human Resources, May 24, 2022 (attached as Exhibit W to the Solotaroff Dec.).

At approximately the same time, Dr. Pak spoke with David Morrell, who was, at the time, the Director of Benefits at Albany Med.[131] After speaking with Dr. Pak, Mr. Morrell became concerned that certain people at Albany Med had engaged in disability discrimination, so he contacted his supervisor in the HR department, Sandra Castilla, to convey these concerns and to suggest that an autism awareness training be conducted for the neurology department.[132] Ms. Castilla did not respond.[133] In June and July 2022, Mr. Morrell made several attempts to coordinate a training in the Neurology Department to help improve awareness, understanding, and support for colleagues with disability, including ASD.[134] Although Mr. Morrell made several efforts to coordinate the training, had identified several organizations willing to conduct this training at no cost to the hospital, and Dr. Panayiotis Varelas, the Chair of the Neurology Department, was supportive of the training, the Neurology Department ultimately declined the training.

In September 2022, Dr. Doherty from ADI contacted Albany Med Medical College Dean Dr. Alan Boulos in order to help provide support and resources for Dr. Pak.[135] Dr. Boulos did not respond.[136] In October 2022, Dr. Doherty reached out to Dr. Varelas to speak on how to best support Dr. Pak.[137] Dr. Varelas referred Dr. Doherty to the GME office or the residency program director.[138] According to Dr. Doherty, Albany Med is the only residency program that has failed to accept her offer to provide support and resources to a resident with Autism.[139] However, on

[131] Declaration of David Morrell ("Morrell Dec.") at ¶ 3.
[132] Morrell Dec. ¶¶ 6-7.
[133] *Id.* at ¶ 7.
[134] *Id.* at ¶¶ 8-9.
[135] Doherty Dec. ¶ 6.
[136] *Id.*
[137] Doherty Dec. ¶ 7.
[138] *Id.*
[139] *Id.* at ¶ 8.

November 22, 2022, Dr. Doherty was contacted by Dr. Rebecca Stetzer, Assistant Dean for Competency-Based Assessment at Albany, who in that role is responsible for remediation of residents in difficulty.[140] Dr Stetzer requested Dr. Doherty's assistance with remediation support for two other autistic residents.[141] Dr. Doherty conferred with Dr. Stetzer on December 8, 2022, and provided advice with respect to those residents.[142]

Finally, in October 2022, the office of David Caudel, an expert in Autism and the Associate Director of the Frist Center for Autism and Innovation at Vanderbilt University sent an email to Dr. Bartfield offering a meeting concerning Dr. Pak.[143] Dr. Bartfield did not respond.[144]

### VI. Albany Med Continues to Discriminate and Retaliate Against Dr. Pak After Her Termination by Providing a False and Defamatory Final Evaluation.

The Accreditation Council for Graduate Medical Education ("ACGME"), which accredits graduate medical education programs in the United States, including the Albany Med Neurology Residency Program, requires programs to provide each resident a final summative evaluation at the end of each resident's training regardless of whether the resident completes the program.[145] Accordingly, Albany Med was required to provide Dr. Pak with a summative evaluation after her dismissal. Any program that would consider Dr. Pak as a resident in the future would insist on reviewing this document, especially in the absence of a positive recommendation from the program director, which Albany Med has refused to provide.[146]

Albany Med's Final Summative Evaluation for Dr. Pak portrays her performance as far worse than it was portrayed contemporaneously. The final evaluation gives Dr. Pak the worst

---

[140] *Id.* at ¶ 9.
[141] *Id.*
[142] *Id.*
[143] Declaration of Dave Caudel ("Caudel Dec.") ¶ 11-12.
[144] *Id.*
[145] ACGME Common Program Requirements (attached as Exhibit AA to the Solotaroff Dec.) at 30.
[146] Pak Dec. ¶ 60.

grade possible "Poor" in almost half of the categories (17 out of 37) even though up to her termination her program directors told her and others that there were no serious concerns with her performance, she was improving, and there were no patient care concerns.[147] This disparity is also evident from a comparison of the final evaluation and the contemporaneous evaluations. For example, the final evaluation gives Dr. Pak a grade of "Poor" for the Medical Knowledge Category of "Applies this Knowledge to Patient Care."[148] Meanwhile, the contemporaneous evaluations related to this topic evaluated Dr. Pak as a "2" or "3" on the 1-5 scale (there is also an option of giving a grade of "Not yet assessable" if the resident has not even reached the level of "1").[149] In addition, Dr. Lansing evaluated Dr. Pak as a "4" in the category of "Locate, appraise and assimilate evidence from scientific studies related to the patient's health problems."[150] Another example is with the category of professionalism. The final evaluation rates Dr. Pak as "Poor" in two of the three professionalism categories, while the contemporaneous evaluations have an average 2.6 score for professionalism.[151]

Moreover, as part of the remediation process, the Neurology Program Directors were required to complete and submit a form called the "Quarterly Worksite Monitor Report" to the Committee for Physician Health. Dr. Amory completed and signed these quarterly reports for the first, second, and third quarters of 2002 (ending March 31, June 30, and September 30, respectively). On each report, the Program Directors were asked to rate Dr. Pak on a scale of 1 to 5 in four distinct areas: "Record keeping," "Available for practice and on-call schedule," "Professional conduct / behavior with patients," and "Professional conduct/behavior with

---

[147] *See* Final Evaluation, Jan. 31, 2023 (attached as Exhibit X to the Solotaroff Dec.).
[148] *See id.*
[149] *See, e.g.,* Ex. A (New Innovations Evaluations) at 4, 11, 16, 35.
[150] *See id.* at 23.
[151] *Compare* Ex. X (Final Evaluation) *with* Ex. A (New Innovations Evaluation) at 5, 13, 18, 23, 36.

colleagues/staff."[152] On each of the three quarterly reports, Dr. Amory gave Dr. Pak a "4" in "Record keeping" and gave her "3"s in the other categories. This scoring is completely inconsistent with the Final Summative Evaluation. In addition, the CPH forms ask if there are "Any comments about this individual (compliments, investigations, complaints, etc)?" On each signed form, Dr. Amory simply wrote "No evidence of mental health issues." These forms are dated November 2, 2022, after the alleged patient safety event.

### VII. Dr. Pak's Efforts to Obtain Another Residency Position.

Since Albany Med terminated Dr. Pak, she has applied to numerous residency programs in a variety of different specialties, including neurology, family medicine, internal medicine, emergency medicine, and anesthesiology.[153] Although many program directors have expressed interest in moving forward with her application, all residency programs require receipt of Dr. Pak's final evaluation, in addition to a letter of recommendation from the program director.[154] Because Albany Med has falsely deflated Dr. Pak's performance in its final evaluation, Dr. Pak cannot move forward with her applications to other residency programs, bringing her medical training to an abrupt halt. In addition, while Dr. Pak has the minimum one year of post-graduate training necessary for her to receive an unrestricted medical license in New York, she would also need to submit the summative evaluation to the licensing entity which would likely result in the denial of her application.

---

[152] *See* CPH Quarterly Work-Site Monitor Reports (attached as Exhibit Y to the Solotaroff Dec.).
[153] Pak Decl. ¶ 59.
[154] *Id.*

## LEGAL ARGUMENT

### II. THE COURT SHOULD REINSTATE DR. PAK AND ENJOIN ALBANY MED FROM DISCRIMINATING OR RETALIATING AGAINST HER; IN THE ALTERNATIVE, THE COURT SHOULD ORDER ALBANY MED TO CORRECT ITS FINAL EVALUATION SO THAT DR. PAK MAY TRANSFER TO ANOTHER RESIDENCY PROGRAM.

#### A. The Applicable Legal Standard.

To obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the non-moving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." *North American Soccer League LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018). Of these factors, irreparable harm is the most important. *Doe v. Rensselaer Polytechnic Inst.*, No. 1:18-CV-1374 (FJS/CFH), 2019 U.S. Dist. LEXIS 5296, at *4 (N.D.N.Y. Jan. 11, 2019). As a result, a preliminary injunction should be granted "where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the nonmoving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014).

#### B. Dr. Pak Will be Irreparably Harmed Prior to a Resolution on the Merits Absent a Court-Ordered Injunction.

If the Court does not grant the emergency relief requested, Dr. Pak will, at minimum, have wasted approximately one year of neurology residency training she had undergone at Albany Med and may permanently lose the opportunity to complete her medical training in order to obtain an unrestricted license to practice medicine, and in particular a license to practice a

chosen specialty. Because the Final Evaluation that Albany Med has prepared is not a true reflection of the work Dr. Pak performed and is clearly intended to harm Dr. Pak's medical career, Dr. Pak cannot submit it as part of her transfer applications. Without an accurate Final Evaluation, Dr. Pak will not be able to complete her PGY-2 year or any further graduate medical training or obtain a medical license.

If Dr. Pak is required to wait until the end of the case to obtain relief, Albany Med would likely take the position that reinstatement is no longer feasible because Dr. Pak's medical skills and knowledge would have eroded in the months and likely years since she last worked as a doctor. Without reinstatement, Dr. Pak would have no recourse other than money damages, which would be inadequate to compensate her for the time spent in the residency program and the loss of her specialized medical career. This constitutes irreparable harm. As this Court explained in *Doe v. Rensselaer Polytechnic Inst.*, "a harm is irreparable because damages cannot adequately capture the value of the thing the plaintiff has lost." Case 1:20-CV-1185, 2020 U.S. Dist. LEXIS 191676, at *34 (N.D.N.Y. Oct. 16, 2020). That is precisely the situation Dr. Pak faces here: the value of her continued medical training cannot adequately be monetized, and reinstatement is the only suitable redress.

Federal courts around the country, including in New York, have found that the interruption in an educational program is an irreparable injury, "especially when the denial of an educational opportunity is coupled with other types of harm." *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012) (granting temporary restraining order and finding "a delay in the ability to pursue a chosen profession" to be irreparable For example, in *Maczaczyj v. State of N.Y.*, 956 F. Supp. 403, 408 (W.D.N.Y. 1997), Judge Curtin found the evidence of irreparable harm caused by the refusal of a university to permit a disabled student to pursue a

graduate degree to be sufficient to support a preliminary injunction where the exclusion "would most likely affect the plaintiff's ability to engage in the future employment of his choice" and there was also an "unquantifiable effect th[e] exclusion will have on plaintiff's mental illness." Because the plaintiff was "likely to suffer additional psychic harm," the court found the injury to be irreparable. *Id.* at 408. (The court denied plaintiff's motion on other grounds.)

Dr. Pak's situation is directly analogous: if the court declines to grant Dr. Pak's motion for a preliminary injunction, she will not be able to complete her medical training and education. *See also Ramsay v. Nat'l Bd. of Med. Exam'rs,* 968 F.3d 251, 262-263 (3d Cir. 2020) (irreparable harm shown where plaintiff established defendant's conduct "jeopardizes her opportunity to pursue her chosen profession.") (internal quotes omitted); *Doe v. Pa. State Univ*., 276 F. Supp. 3d 300, 313-315 (M.D. Pa. 2017) (holding that a student's suspension, which would have interfered with student's future medical career, constituted irreparable injury warranting the issuance of a preliminary injunction reinstating the student); *Fenje v. Feld,* 2002 U.S. Dist. LEXIS 9492, *18 (N.D. Ill. May 28, 2002) (finding, in the context of a preliminary injunction motion by a resident seeking reinstatement, that "monetary relief would not be an adequate remedy because it would still leave plaintiff without the ability to practice in his chosen field").

**C. Dr. Pak is Likely to Succeed on the Merits of her Claims.**

There is abundant evidence that Albany Med discriminated against Dr. Pak based on her disability and retaliated against Dr. Pak after she complained of unequal treatment when it terminated her from the neurology residency Program. Albany Med's decisionmakers, neurology residency program directors Robeson and Amory, singled her out for mistreatment including placing her on a disciplinary remediation plan, falsely accused her of stealing from other residents, refused to actually provide promised accommodations, rejected assistance and training

in working with persons with autism, and terminated her from the residency program without basis twice, the second time immediately after Dr. Pak had complained about the discrimination to the dean of Albany Med. Accordingly, Dr. Pak has a high probability of success on her claims.

**D. The Balance of the Hardships Tips in Dr. Pak's Favor.**

When the potential harm that injunctive relief during adjudication of the present case could cause to Albany Med is weighed against the harm that denial of the present request would cause to Dr. Pak, the balance weighs overwhelmingly in Dr. Pak's favor.

While the potential harm described above is irreparable and severe to Dr. Pak, it is hard to articulate any harm that granting the injunctive relief could cause to Albany Med. If the Court grants the request for reinstatement, Albany Med would benefit the services of a resident who was performing satisfactorily, was improving, and for which there were no serious patient care concerns. If the Court grants the request to correct Dr. Pak's final evaluation, Albany Med would simply be required to provide an accurate and truthful evaluation.

**E. The Public Interest Would Not be Disserved by the Issuance of an Injunction.**

It is in the public interest to ensure that everyone — including medical residents with autism – is free from discrimination. *See Beckhorn v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 U.S. Dist. LEXIS 7781, at *24 (W.D.N.Y January 16, 2019) (granting preliminary injunction and recognizing public interest in protection of disability discrimination statutory rights "weighs in favor of granting a preliminary injunction"); *Step by Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112, 125 (N.D.N.Y. 2016) (recognizing public interest in preventing disability discrimination in housing).

**CONCLUSION**

Because Dr. Pak has demonstrated all four prongs of the above-outlined test for a preliminary injunction, this Court should grant the attached order seeking a preliminary injunction reinstating Dr. Pak. In the alternative, the Court should issue an order directing Albany Med to provide her with an accurate Final Summative Evaluation.

Dated: July 7, 2023
New York, New York

**GISKAN SOLOTAROFF & ANDERSON LLP**

*/s/ Jason Solotaroff*
Jason L. Solotaroff
Amy E. Robinson
90 Broad Street, 2nd Fl.
New York, NY 10004
(212) 847-8315
jsolotaroff@gslawny.com
arobinson@gslawny.com
*Attorneys for the Plaintiff*