UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STELLA PAK, M.D.,

              Plaintiff,

        -v-                   1:23-cv-378

ALBANY MED HEALTH
SYSTEM,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

GISKAN SOLOTAROFF &          AMY ROBINSON, ESQ.
   ANDERSON, LLP              JASON L. SOLOTAROFF, ESQ.
Attorneys for Plaintiff
90 Broad Street – 2nd Floor
New York, NY 10004

BOND, SCHOENECK & KING,    ROBERT F. MANFREDO, ESQ.
   PLLC                              MARA DEW AFZALI, ESQ.
Attorneys for Defendant
22 Corporate Woods Blvd.
Albany, NY 12211

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On March 24, 2023, Dr. Stella Pak ("Pak" or "plaintiff") filed this action against Albany Med Health System ("Albany Med" or "defendant"). Dkt. No. 1. Plaintiff's complaint alleges that defendant failed to accommodate her autism spectrum disorder ("ASD"), subjected her to discrimination because of her disability, and retaliated against her due to her opposition to disability discrimination in violation of Section 504 of the Rehabilitation Act and the New York State Human Rights Law. *Id.*

On July 7, 2023, Pak moved for a preliminary injunction. Dkt. No. 12. Plaintiff's motion seeks an order reinstating her into Albany Med's Neurology Residency Program, or in the alternative, an order directing Albany Med to provide her with an accurate final evaluation so she can move forward with applications to other residency programs. *Id.* The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

Pak was a medical resident in Albany Med's Neurology Residency Program from September 2021 until her termination from the program in October 2022. Compl. ¶¶ 15, 69. Plaintiff alleges that throughout her time as a resident in the program, she endured hostility and unfair treatment at

the hands of the program's directors. *Id.* ¶ 3. Specifically, plaintiff asserts that the program directors singled her out for mistreatment by placing her on a disciplinary remediation plan, falsely accusing her of stealing from other residents, refusing to provide promised accommodations, rejecting assistance and training in working with persons with ASD, and terminating her from the residency program without basis. Dkt. No. 12-3 ("Pak Dec."), ¶¶ 16, 29–30, 40–41, 52–58. Plaintiff maintains that even after being terminated, the program directors discriminated and retaliated against her by preparing a final summative evaluation that mischaracterizes her performance and makes it extremely difficult for her to obtain another residency position or a license to practice medicine. *Id.* ¶¶ 59–62.

## III. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The party seeking the injunction carries the burden of persuasion to demonstrate 'by a clear showing' that the necessary elements are satisfied." *N.Y. Bay Cap., LLC v. Cobalt Holdings, Inc.*, 456 F. Supp. 3d 564, 570 (S.D.N.Y. 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

To prevail on a motion for a preliminary injunction, the party seeking relief must demonstrate: (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the

merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest. *Dr. A. v. Hochul*, 586 F. Supp. 3d 136, 141 (N.D.N.Y. 2022) (citing *Page v. Cuomo*, 478 F. Supp. 3d 355, 362–63 (N.D.N.Y. 2020)).

However, where the party seeking preliminary injunctive relief is not seeking to restore the *status quo ante* but rather requesting an order that commands an affirmative act or mandates a specific course of conduct, a heightened standard applies. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). Such relief should be issued only "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."[1] *Id.* (citing *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)).

## IV. **DISCUSSION**

Pak's motion for a preliminary injunction seeks an order reinstating her into Albany Med's Neurology Residency Program. Pl.'s Mem., Dkt. No. 12-1 at 4.[2] In the alternative, plaintiff's motion requests an order directing

---

[1] Albany Med argues that this heightened standard should be applied. Def.'s Opp'n, Dkt. No. 18 at 12. Because Pak cannot satisfy the requirements of the lower standard, as determined *infra*, defendant's argument need not be addressed.

[2] Pagination corresponds to CM/ECF.

Albany Med to provide her with an accurate final evaluation of her performance.  *Id.*

## A. <u>Irreparable Harm</u>

 "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'"  *Dr. A.*, 586 F. Supp. 3d at 146 (quoting *Page*, 478 F. Supp. 3d at 363).  "To satisfy the irreparable harm requirement, the plaintiff must demonstrate that absent a preliminary injunction she will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Page*, 478 F. Supp. 3d at 363 (cleaned up).

Pak asserts that she will suffer irreparable harm if injunctive relief is not granted because she will "at minimum, have wasted approximately one year of neurology residency training she had undergone at Albany Med and may permanently lose the opportunity to complete her medical training in order to obtain an unrestricted license to practice medicine, and in particular a license to practice a chosen specialty."  Pl.'s Mem. at 25–26.  According to plaintiff, "[b]ecause the Final Evaluation that Albany Med has prepared is not a true reflection of the work [she] performed and is clearly intended to harm [her] medical career, [she] cannot submit it as part of her transfer applications."  *Id.* at 25.  Thus, plaintiff maintains that "without an accurate Final

Evaluation, [she] will not be able to complete . . . any further graduate medical training or obtain a medical license." *Id.*

In opposition, Albany Med relies on the well-settled line of cases holding that injuries generally associated with the discharge of employment, such as lost income, damage to reputation, and difficulty finding future employment, do not constitute irreparable harm. *See* Def.'s Opp'n at 13–15; *see Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) ("[I]nsufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual."); *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90–91 (2d Cir. 1983) ("[I]rreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."). This is because in most cases, the relief available at the conclusion of a successful lawsuit can adequately compensate a wrongfully discharged employee for employment-related injuries. *See Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("Since reinstatement and money damages could make appellees whole for any loss

suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief.").

Albany Med draws particular attention to *Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405 (S.D.N.Y. 2013). *See* Def.'s Opp'n at 15. In *Peck*, the Court denied a medical resident's request to enjoin her employer, a medical center, from proceeding with a committee review of her proposed discharge from the medical center's residency program. 987 F. Supp. 2d at 407. The Court held that the medical resident failed to demonstrate irreparable harm because the formalized review process was still underway and would afford her the opportunity to challenge the proposed termination. *Id.* at 410–13. Instructive here, the Court went on to recognize that even if the medical center were to eventually discharge the medical resident from the residency program, she would nevertheless be unable to demonstrate irreparable harm because "she would have a remedy at law, in the form of money damages, to compensate her for [her] injuries." *Id.* at 413.

Measured against this body of case law, Pak has failed to show irreparable harm. Plaintiff alleges no more than the injuries generally associated with a

discharge from employment.³  As a result, plaintiff has failed to demonstrate that extraordinary circumstances warrant preliminary injunctive relief.⁴  In so finding, "the Court does not minimize the damage to a medical resident that could be done by wrongful termination from a residency program." *Peck*, 987 F. Supp. 2d at 413.  Rather, this holding merely acknowledges that if plaintiff ultimately succeeds in demonstrating that she was wrongfully

---

³ Pak argues that the lost opportunity to engage in one's preferred occupation constitutes an irreparable harm.  Pl.'s Mem. at 26–27.  In support of this argument, plaintiff relies on several cases. *See id.*  While these cases recognize that the loss of opportunity is relevant in assessing irreparable harm, they are nonetheless distinguishable.  The plaintiffs in these cases were students, not employed medical residents.  *See Ramsay v. Nat'l Bd. of Med. Exam'rs,* 968 F.3d 251, 262–63 (3d Cir. 2020); *Maczaczyj v. State of N.Y.*, 956 F. Supp. 403, 408 (W.D.N.Y. 1997); *Doe v. Pa. State Univ.*, 276 F. Supp. 3d 300, 313–15 (M.D. Pa. 2017); *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012).  While plaintiff does cite one case involving a medical resident, the decision is nonbinding on this Court.  *See Fenje v. Feld*, 2002 WL 1160158, at *6–8 (N.D. Ill. May 29, 2002).

⁴ Pak's delay in moving for a preliminary injunction undermines her argument for irreparable harm.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (explaining that a party's delay undermines the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is no irreparable injury).  The decision to terminate plaintiff was confirmed in January 2023.  Pak Dec. ¶ 51.  Plaintiff did not file this motion until July 2023.  *See* Compl.  Such a delay runs counter to plaintiff's insistence that preliminary relief is necessary.  *See Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 222 (S.D.N.Y. 2019) (noting that courts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months).

terminated, she will have an adequate remedy at law in the form of money damages and possibly reinstatement.[5]

As it has been determined that Pak has failed to establish that she will be irreparably harmed in the absence of preliminary injunctive relief, the remaining requirements for the issuance of a preliminary injunction need not be addressed.  *See Vargas v. Viacom Int'l, Inc.*, 366 F. Supp. 3d 578, 584 (S.D.N.Y. 2019) ("For lack of a demonstrated irreparable harm in the absence of an injunction, the remaining requirements for a preliminary injunction need not be addressed.").  Accordingly, plaintiff's motion for a preliminary injunction shall be denied.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated:  December 15, 2023
        Utica, New York.

David N. Hurd
U.S. District Judge

---

[5] Pak argues that if she "is required to wait until the end of the case to obtain relief, Albany Med would likely take the position that reinstatement is no longer feasible because [her] medical skills and knowledge would have eroded in the months and likely years since she last worked as a doctor." Pl.'s Mem. at 26.  This argument is speculative, and in any event, plaintiff has failed to identify any case law holding that the atrophy of skills and knowledge constitutes irreparable harm. *See id.*